AO-106 (Rev: 06/09)-Application for Search Warrant

**FILED**
FEB 17 2023
Mark C. McCartt, Clerk
U.S. DISTRICT COURT

# UNITED STATES DISTRICT COURT
### for the
### Northern District of Oklahoma

| | |
|---|---|
| In the Matter of the Search of )<br>*Information Associated with the Ring Doorbell Camera* )<br>*with MAC Address 34:3E:A4:30:45:CF that is Stored at a* )<br>*Premises Controlled by Ring, LLC* )<br>) | Case No. 23-mj-103-CDL<br><br>**FILED UNDER SEAL** |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment "A." This court has authority to issue this warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A).

located in the __Central__ District of __California__, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment "B"

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. §§ 1151, 1153, 1111 | Murder in the First Degree in Indian Country |
| 18 U.S.C. § 924(c)(1)(A)(iii) | Carrying, Using, Brandishing, and Discharging a Firearm During and in Relation to a Crime of Violence in Indian Country |

The application is based on these facts:
   See Affidavit of SA Blair Newman, attached hereto.

☑ Continued on the attached sheet.

☐ Delayed notice of ___ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Blair Newman, Special Agent, FBI
*Printed name and title*

Sworn to before me via telephone.

Date: February 17, 2023

*Judge's signature*

City and state: Tulsa, Oklahoma

Christine D. Little, U.S. Magistrate Judge
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| In the Matter of the Search of Information Associated with the Ring Doorbell Camera with MAC Address 34:3E:A4:30:45:CF that is Stored at a Premises Controlled by Ring, LLC | Case No. _____ <br><br> **FILED UNDER SEAL** |

**Affidavit in Support of an Application for a Search Warrant**

I, Blair Newman, being first duly sworn under oath, depose and state:

**Introduction and Agent Background**

1. I make this affidavit in support of an application for a search warrant for information associated with a certain account that is stored at a premises owned, maintained, controlled, or operated by Ring LLC ("Ring"), a home security products company owned by Amazon.com, Inc. and headquartered in Santa Monica, California. The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require Ring to disclose to the government records and other information in its possession, including video content, pertaining to the Ring Doorbell Camera with MAC Address 34:3E:A4:30:45:CF, as further described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review the information to locate the items described in Section II of

Attachment B.

2. I am a federal law enforcement officer as defined under Rule 41(a)(2)(C) and am authorized to request this search warrant because I am a government agent who is engaged in enforcing federal criminal laws and I am within the category of officers authorized by the Attorney General to request such a warrant. I am a Special Agent with the Federal Bureau of Investigation ("FBI") and have been since May 2019. I am assigned to the Raleigh Resident Agency of the Charlotte Division but am on a temporary assignment to the Oklahoma City Field Office, Tulsa Resident Agency. My primary duties as a Special Agent with the FBI include investigating crimes occurring in Indian Country, to include violations relating to Title 18 United States Code, Sections 1151, 1153, 1111, Murder in the First Degree in Indian Country, and Title 18 United States Code Section 924(c)(1)(A)(iii), Discharging a Firearm During.

3. I am familiar with the facts and circumstances of this investigation. The facts set forth in this affidavit are based on my personal observations, knowledge obtained from other law enforcement officers, my review of documents related to this investigation, conversations with others who have personal knowledge of the events and circumstances described herein, and a review of open-source information including information available on the Internet. Because this affidavit is submitted for the limited purpose of establishing probable cause in support of the application for a search warrant, it does not set forth each and every fact that I or others have learned during the course of this investigation.

4. Based on my training, research, experience, and the facts as set forth in this affidavit, there is probable cause to believe that violations of Title 18 United States Code, Sections 1151, 1153, 1111, Murder in the First Degree in Indian Country, and Title 18 United States Code Section 924(c)(1)(A)(iii), Carrying, Using, Brandishing, and Discharging a Firearm During and in Relation to a Crime of Violence in Indian Country have been committed by LUCAS ANTHONY WALKER. There is also probable cause to search the information described in Attachment A for evidence, instrumentalities, and/or fruits of these crimes further described in Attachment B.

## Jurisdiction

5. This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711. 18 U.S.C. §§ 2703(a), (b)(1)(A), & (c)(1)(A). Specifically, the Court is "a district court of the United States . . . that has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

6. When the government obtains records pursuant to § 2703, or pursuant to a search warrant, the government is not required to notify the subscriber of the existence of the warrant. 18 U.S.C. § 2703(a), (b)(1)(A), (c)(2), and (3). Additionally, the government may obtain an order precluding Ring from notifying the subscriber or any other person of the warrant, for such period as the Court deems appropriate, where there is reason to believe that such notification will seriously jeopardize the investigation. 18 U.S.C. § 2705(b).

## Probable Cause

7. On January 20, 2023, at approximately 1300 hours, Washington County Sheriff's Office ("WCSO") personnel completed a search warrant at a residence located at 397620 W 1300 Road, Dewey, Oklahoma while investigating the suspicious disappearance of DEBORAH DUTTON and LAWRENCE "LARRY" DUTTON. The residence is in the Northern District of Oklahoma and within the boundaries of the Cherokee Nation.

8. The two occupants of the residence, identified as LUCAS WALKER and a 17-year-old juvenile female, H.D., were detained by the search warrant service. H.D. was determined to be the adopted daughter, and biological granddaughter, of the two victims. WALKER was identified via social media as being in a romantic relationship with H.D.

9. Further investigation into the residence by WCSO personnel provided probable cause of foul play in the residence after blood was discovered to have been cleaned from the floors in the main bedroom but had seeped under the baseboards.

10. WALKER and H.D. were taken off-site and interviewed by WCSO personnel. During the interviews, which were audio and video recorded, WALKER admitted killing DEBORAH DUTTON and LARRY DUTTON. H.D. also admitted killing the DUTTONS, but later said WALKER killed them. According to WALKER, he entered the DUTTON's residence on December 19, 2022, while the DUTTONS were asleep. WALKER obtained a .22 caliber pistol from inside the house. He said he waited in H.D.'s bedroom until he heard noise from the main

bedroom. WALKER then moved to outside of the main bedroom. When DEBORAH DUTTON opened the door to the main bedroom, WALKER shot her in the face with the pistol. DEBORAH DUTTON fell to the floor. When LARRY DUTTON got out of bed and rushed him, WALKER attempted to shoot LARRY DUTTON, but the pistol jammed. Subsequently, WALKER stabbed LARRY DUTTON multiple times in the face, chest, and stomach. DEBORAH DUTTON also sustained multiple injuries from a knife. WALKER and H.D. admitted to dragging DEBORAH DUTTON and LARRY DUTTON outside the residence and burying them in the backyard.

11. While conducting the search of the residence on January 20, 2023, WCSO personnel discovered LARRY DUTTON's cellular telephone. The cellular telephone was unlocked and connected to the Ring Doorbell Security System. While observing video captured by the Ring camera located in the vicinity of the back deck, WCSO personnel observed two individuals, identified by WCSO personnel as WALKER and H.D., drag a body across the deck utilizing a sheet. WALKER was identified as being located near the feet of the person being dragged and H.D. was identified as being the person located near the head of the person being dragged. WCSO personnel were unable to determine if the body being dragged was male or female, but the body was of human form. WCSO personnel observed feet, legs, and a belly of human form in the sheet. According to the time stamp on the camera, the recording occurred on December 22, 2022, at approximately 0138 hours. During his recorded interview on January 20, 2023, WALKER stated he put DEBORAH DUTTON and

LARRY DUTTON on "sheets," and agreed the victims were buried in the backyard. The MAC address of this camera was observed to be 34:3E:A4:30:45:CF.

12. While conducting the search of the residence on January 20, 2023, WCSO personnel observed a heavy odor of cleaning supplies and bleach. During his recorded interview of January 20, 2023, WALKER stated he cleaned "most of the area up" and used a mop to clean up the residence.

13. On January 20, 2023, at approximately 1826 hours, an anthropologist with the Oklahoma State Bureau of Investigation (OSBI) arrived at the residence to investigate disturbed dirt in the backyard where the bodies, based on statements made by WALKER and H.D., might be buried. While probing the area, the anthropologist stated she felt something interesting, but could not confirm nor deny it was a human body. The anthropologist, based on her experience, recommended the area should be further investigated. Specifically, the anthropologist advised the area would need to be dug and sifted for evidence and/or bodies. Based on weather considerations, WCSO personnel coordinated for OSBI personnel to investigate the potential burial area on January 22, 2023.

14. On January 22, 2023, OSBI recovered the deceased bodies of DEBORAH DUTTON and LARRY DUTTON from the backyard of their residence, 397620 W 1300 Road, Dewey, Oklahoma.

15. WALKER is a confirmed member of the Cherokee Nation.

16. On January 26, 2023, the FBI served Ring with a preservation request pursuant to 18 U.S.C. § 2703(f), requiring Ring to preserve all information associated

with the account described in Attachment A.

## Information about Ring[1]

17. From my review of publicly available information provided by Ring about its services, including Ring's "Privacy Policy" and "Terms of Service," I am aware of the following about Ring and about the information collected and retained by Ring:

   a. Ring sells products and services designed to see, hear, and speak to anyone at the customer's door from the customer's computer or mobile device.

   b. Ring generally has access to videos only if the user has a current Ring Protect Plan subscription. If users choose to subscribe to a Ring Protect Plan, the customer device automatically sends to Ring for storage any video footage and/or audio recordings captured by Ring products installed by the customer.

   c. Even if a user does not have a Ring Protect Subscription plan, Ring devices will automatically record during an answered motion or ring, but those recordings are not retained unless the user shares them through the Neighbors App feature. The Neighbors App feature allows the customer to publicly share any video footage and/or audio recording captured by Ring devices with other users through the Ring application. If shared, Neighbors App recordings are retained regardless of customer participation in Ring Protect.

---

[1] The information in this section is based on information published by Ring, LLC on its website, including, but not limited to, the following webpage: "Privacy Notice," available at https://ring.com/.

7

d. Videos are generally for retained up to 180 days. At any time during the retention period, a user may delete a video.

e. Ring asks customers to provide personal information in connection with Ring's products and services. This may include: contact information, such as name, phone number, email, and postal address; account information, such as online password and other log-in details used to access Ring's products and services.

f. Ring obtains payment information, such as name, billing address and payment card details, including card number, expiration date and security code. Payment information is collected and stored by a third-party payment processor on Ring's behalf; Ring only stores the last four digits of the customer's payment card and the expiration date.

g. Ring also obtains the geolocation of customers' mobile devices if such customers consent to the collection of this data.

h. Ring also obtains product setup information, including the name and description of the Ring product and location where it is installed, technical information about the product, including Wi-Fi network information and signal strength, and information about the device's model, serial number, and software version.

i. Ring also obtains social media handles, content, and other data posted on Ring's official social media page and other personal information contained in content Ring users submit through Ring's "Contact Us" feature or customer support tools on Ring's website or mobile application.

### Connection of Ring to the Investigation

18. As explained herein, information stored in connection with a Ring account may provide evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion. In my training and experience, captured video and audio contents, images, comments, and other data collected by Ring products about the surrounding environment can be evidence of who was present at a particular physical location at a relevant time. This geographic and timeline information may tend to either inculpate or exculpate the Ring account owner or others connected to the crime.

19. Based on the information above, Ring's servers are likely to contain the types of material described above, including stored video and audio content and information concerning the use of the Ring Doorbell Camera with MAC Address 34:3E:A4:30:45:CF. In my training and experience, such information may constitute evidence of the crimes under investigation including Murder in the First Degree in Indian Country and Discharging a Firearm During.

### Information to be Searched and Things to be Seized

20. Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant. The government will execute this warrant by serving it on Ring. Because the warrant will be served on Ring, who will then compile the requested records at a time convenient to it,

reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

21. I anticipate executing this warrant under the Electronic Communications Privacy Act, in particular Title 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A), by using the warrant to require Ring to disclose to the government digital copies of the records and other information (including the content of communications) particularly described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

22. In conducting this review, law enforcement personnel may use various methods to locate evidence and instrumentalities of the crime(s) under investigation, including but not limited to undertaking a cursory inspection of all information within the account described in Attachment A. This method is analogous to cursorily inspecting all the files in a file cabinet in an office to determine which paper evidence is subject to seizure. Although law enforcement personnel may use other methods as well, particularly including keyword searches, I know that keyword searches and similar methods are typically inadequate to detect all information subject to seizure. As an initial matter, keyword searches work only for text data, yet many types of files commonly associated with e-mails, including attachments such as scanned documents, pictures, and videos, do not store data as searchable text. Moreover, even as to text data, keyword searches cannot be relied upon to capture all relevant

10

communications in an account as it is impossible to know in advance all of the unique words or phrases investigative subjects will use in their communications, and consequently there are often many communications in an account that are relevant to an investigation but do not contain any searched keywords.

## Conclusion

23. Based on the information above, I submit that there is probable cause to believe that there is evidence of violations of Title 18 United States Code, Sections 1151, 1153, 1111, Murder in the First Degree in Indian Country, and Title 18 United States Code Section 924(c)(1)(A)(iii), Carrying, Using, Brandishing, and Discharging a Firearm During and in Relation to a Crime of Violence in Indian Country, located within the information described in Attachment A.

24. I request to be allowed to share this affidavit and the information obtained from this search (to include copies of digital media) with any government agency, to include state and local agencies investigating or aiding in the investigation of this

case or related matters, and to disclose those materials as necessary to comply with discovery and disclosure obligations in any prosecutions from this matter.

Respectfully submitted,

*[signature]*

Blair Newman
Special Agent
FBI

Subscribed and sworn to by phone on February __17__, 2023.

*[signature]*

CHRISTINE D. LITTLE
UNITED STATES MAGISTRATE JUDGE

## ATTACHMENT A

### Property to be Searched

This warrant applies to information associated with the Ring Doorbell Camera with MAC Address 34:3E:A4:30:45:CF, that is stored at premises owned, maintained, controlled, or operated by Ring, LLC, a company that is owned by Amazon.com, Inc. and headquartered in Santa Monica, California.

## ATTACHMENT B

## Particular Things to be Seized

I.  **Information to be disclosed by Ring, LLC**

To the extent that the information described in Attachment A is within the possession, custody, or control of Ring, LLC, regardless of whether such information is located within or outside of the United States, including videos, communications, records, files, logs, or information that have been deleted but are still available to Ring, LLC, or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Ring, LLC is required to disclose the following information to the government, in unencrypted form whenever available:

a.  All video and audio content and all logs and records associated with the content for the account from 00:00 on December 18, 2022 to 13:10 on January 20, 2023, 00:00 to 23:59, Central Standard Time, including stored or preserved copies of such video and audio content;

b.  All location data associated with the particular device or devices used to login to or access the account, including geotags from 00:00 on December 18, 2022 to 13:10 on January 20, 2023;

c.  All data and information that has been deleted by the user from 00:00 on December 18, 2022 to 13:10 on January 20, 2023;

d.  All identity and contact information, including full name, e-mail address, physical address (including city, state, and zip code), phone numbers,

payment and billing information, including billing address and payment card details, and other personal identifiers;

e.  The dates and times at which the account and profile were created, the Internet Protocol ("IP") address at the time of sign-up, all activity logs including IP logs and other documents showing the IP address, date, and time of each login to the account, as well as any other log file information;

f.  All information regarding the particular device or devices used to login to or access the account, including all device identifier information or cookie information, including all information about the particular device or devices used to access the account and the date and time of those accesses;

g.  All user content created, uploaded, or shared by the account, including any comments made by the account on other content and any content shared through the Ring neighbors feature from 00:00 on December 18, 2022 to 13:10 on January 20, 2023;

h.  All privacy and account settings;

i.  All information about connections between the account and third-party websites and applications; and

j.  All records pertaining to communications between Ring, LLC and any person regarding the user or the user's Ring account, including contacts with support services, and all records of actions taken, including suspensions of the account.

Ring, LLC is hereby ordered to disclose the above information to the government within **14 days** of issuance of this warrant.

2

## II.   Information to be seized by the government

All information described above in Section I that constitutes evidence, instrumentalities, and/or fruits of violations of Title 18 United States Code, Sections 1151, 1153, 1111, Murder in the First Degree in Indian Country, and Title 18 United States Code Section 924(c)(1)(A)(iii), Carrying, Using, Brandishing, and Discharging a Firearm During and in Relation to a Crime of Violence in Indian Country, including, for each account or identifier listed on Attachment A:

a.   Specific information relevant to the crime(s) under investigation;

b.   Evidence indicating how and when the Ring account was accessed or used, to determine the chronological and geographic context of account access, use, and events relating to the crime under investigation and to the Ring account owner;

c.   Evidence that may identify any co-conspirators or aiders and abettors, including records that help reveal their whereabouts.

This warrant authorizes a review of electronically stored information, communications, other records and information disclosed pursuant to this warrant in order to locate evidence, instrumentalities, and/or fruits described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the FBI may deliver a complete copy of the disclosed electronic data to the custody and control of attorneys for the government and their support staff for their independent review.

## Certificate of Authenticity of Domestic Records Pursuant to Federal Rules of Evidence 902(11) and 902(13)

I, _____, attest, under penalties of perjury by the laws of the United States of America pursuant to 28 U.S.C. § 1746, that the information contained in this certification is true and correct. I am employed by Ring, LLC ("Ring") and my title is _____. I am qualified to authenticate the records attached hereto because I am familiar with how the records were created, managed, stored, and retrieved. I state that the records attached hereto are true duplicates of the original records in the custody of Ring. The attached records consist of _____ **[GENERALLY DESCRIBE RECORDS (pages/CDs/megabytes)]**. I further state that:

a. All records attached to this certificate were made at or near the time of the occurrence of the matter set forth by, or from information transmitted by, a person with knowledge of those matters, they were kept in the ordinary course of the regularly conducted business activity of Ring, and they were made by Ring as a regular practice; and

b. Such records were generated by Ring's electronic process or system that produces an accurate result, to wit:

   1. The records were copied from electronic device(s), storage medium(s), or file(s) in the custody of Ring in a manner to ensure that they are true duplicates of the original records; and

2. The process or system is regularly verified by Ring, and at all times pertinent to the records certified here the process and system functioned properly and normally.

I further state that this certification is intended to satisfy Rules 902(11) and 902(13) of the Federal Rules of Evidence.

_____     _____
Date                                Signature